Philip J. Nathanson (Arizona State Bar #013624)
**THE NATHANSON LAW FIRM**
8326 E. Hartford Dr., Suite 101
Scottsdale, AZ 85255
Phone Number: (480) 419-2578
philipj@nathansonlawfirm.com

*Former Attorneys for Special Counsel to Debtor*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | In Proceedings Under Chapter Eleven |
| 12 UNIVERSITY, LLC, | Case No. 4-20-BK-11567 BMW |
| *Debtor*. | **FORMER SPECIAL COUNSEL RESPONSE TO MOTION TO COMPEL**. |

Former Special Counsel, PHILIP J. NATHANSON and THE NATHANSON LAW FIRM, submits this Response to the Motion to Compel filed by Successor Counsel for the Debtor. Attorney NATHANSON does not object to providing time records. He seeks 14 days to do so. Nor does Attorney NATHANSON object to providing any paper files that he may have on the Diller matters he handled. Attorney NATHANSON produced to Mr. Gardner at the end of November, via a DropBox production, his computer files that were generated by his firm and received by his firm in the matters discussed below.

But Attorney NATHANSON does object to the rationale for the motion and the prior motion to disgorge filed by Mr. New Delman to which Attorney NATHANSON filed a Response when Mr. New Delman's OSC motion was filed. The fact was, and remains, that Attorney NATHANSON was retained by the Dillers long before this Chapter 11 bankruptcy was filed, and he received the $100,000 lump-sum fee in 2019 that he more than earned to litigate the following matters before this bankruptcy petition was filed:

1

1. The post-jury verdict issues in the Superior Court case, including issues regarding a property bond, a supersedeas bond and a Rule 59 post-verdict motion to set aside the jury verdict and obtain a new trial;

2. A special action proceeding in the Arizona Court of Appeals to allow the 12 University property to be posted as a bond in lieu of a supersedeas bond;

3. An appeal as of right in the Arizona Court of Appeals from the judgment entered on the jury verdict following the denial of the Rule 59 motion, which appellate court issued a written opinion on the merits of the appeal after full briefing by NATHANSON;

4. Motions in the Supreme Court of Arizona regarding a Petition for Review, which Petition may still be filed;

5. The defense of the federal Declaratory Judgment case brought by the Auto Owners insurance carrier to establish non-cooperation by the Dillers. Attorney NATHANSON wrote, filed and litigate a Motion for a Preliminary Injunction before Judge Jorgenson to compel the insurance carrier to provide a supersedeas bond, which resulted in a written opinion by Judge Jorgenson.

Contrary to the foregoing proceedings, prior counsel for the Debtor filed a bare-bones Motion to Disgorge that did not present the actual facts to this Court. Instead, the Motion presented conclusions without any factual or evidentiary support. That Motion to Disgorge did not present any legal argument or citation to legal authorities that would justify the disgorgement of the attorney fees received by the former Special Counsel for the services he performed prior to the filing of this Chapter 11 proceeding.

Mr. Gardner barely acknowledges that he was sent, and he received, Attorney NATHANSON's digital files that were so voluminous that they had to be sent via DropBox when NATHANSON sent them to him to Mr. Gardner on November 24. Attorney NATHANSON did all of his work on his computer. Everything he did and filed for the Dillers is in those computer and digital files that NATHANSON sent to Mr. Gardner on 11/24.

THE NATHANSON LAW FIRM
8326 E Hartford Dr. Suite 101
Scottsdale, AZ 85255
480 - 419-2578

2

Case 4:20-bk-11567-BMW    Doc 192    Filed 01/31/22    Entered 01/31/22 19:28:27    Desc
Main Document    Page 2 of 9

Mr. Gardner did write to Attorney NATHANSON that the "Dillers" believe that they gave him paper files/thumb drives. There was various information submitted on one or more thumb drives to NATHANSON that was loaded onto his computer and transmitted back to Mr. Gardner in Attorney NATHANSON's November upload of his digital and computer files via DropBox. While Mr. Diller apparently insists that NATHANSON was sent paper or physical files, Attorney NATHANSON has been unable to locate any such files. If he locates them, he will immediately transmit them.

As far as the emails go, there were voluminous emails sent to NATHANSON by the Dillers and there were emails he received from other lawyers and witnesses that he forwarded to the Dillers at the time they were received. NATHANSON has been attempting to determine if there are a few emails that do not fit in either of those categories. NATHANSON is not, under State Bar rules, required to re-submit to the Dillers what they already have received from him.

As far as the time records go, NATHANSON was not asked to document his time by the Dillers when he said he would withdraw for cause from all of their cases. The prior bankruptcy lawyer, Mr. NewDelman, filed an OSC motion in the Bankruptcy Court to force NATHANSON to disgorge the lump-sum fee that the Dillers gave me long before the bankruptcy case was filed. Mr. Gardner suggested to NATHANSON that he should submit a generalized, re-constructed time breakdown to show that I earned the lump-sum fee before the bankruptcy was filed. NATHANSON said he would do that. But that was in reference to the pending motion to disgorge. The Response NATHANSON filed long ago to the OSC motion, with exhibits, refutes the notion that he received a "retainer." There were three lawyers in The Nathanson Law Firm keeping time on the Diller cases. The time was loaded into the TABSIII time and billing software on a separate server. As Mr. Gardner was previously advised via email, The Nathanson Law Firm has been having trouble accessing that time and billing data due to communications issues with

3

Case 4:20-bk-11567-BMW    Doc 192    Filed 01/31/22    Entered 01/31/22 19:28:27    Desc
Main Document    Page 3 of 9

that time and billing server.  We have unsuccessfully tried to rectify those issues in-house, and we are now going to have to hire a computer IT tech to fix the server.  We respectfully ask the Court to grant an additional 14 days to provide the time and billing information.

**PRIOR CONTENTIONS RAISED IN NEW DELMAN OSC MOTION**

There were two matters NATHANSON agreed to handle, the Superior Court tort suit and the federal court declaratory judgment case brought by the Auto Owners liability insurance carrier.  A counterclaim was filed in the federal court declaratory case on behalf of the debtor and the two Diller individuals that was litigated before that federal action was stayed.  The fee agreement signed by these attorneys on August 19, 2019, long before any bankruptcy filing (Ex. #1 to Response to OSC), contained a scope of engagement in the intial paragraphs that limited the representation to the two court cases.  But the OSC Motion claims that the engagement "also included resolving or litigating the Notice of Claim against the City of Tucson for a Water Trespass ("City of Tucson Case").  That part is not true today and was not true when this Court employed Special Counsel.

The fee agreement was silent regarding any "City of Tucson" case because The Nathanson Law Firm, which drafted that fee and retention agreement did not agree to file any "City of Tucson" case as ***plaintiff's*** counsel as part of their fee agreement to obtain the $100,000 lump-sum fee.  Rather, those attorneys agreed to ***defend*** two court cases, the state tort case and the federal declaratory case.  Debtor's counsel improperly suggested that these attorneys agreed to file a ***plaintiff's*** case against the City of Tucson and to fund such a major undertaking in terms of case expense and attorney time themselves.   That did not happen in 2019 when these attorneys were first retained and these attorneys did not agree to do that when debtor's counsel filed an Application to appoint Special Counsel.  At that time these attorneys submitted their Exhibit #1 fee agreement to debtor's counsel and signed an affidavit, prepared by debtor's counsel, that was to the OSC Response as Exhibit

4

Case 4:20-bk-11567-BMW    Doc 192    Filed 01/31/22    Entered 01/31/22 19:28:27    Desc
Main Document    Page 4 of 9

#2. That affidavit was submitted to this Court at that time by debtor's counsel, and provides in part as follows:

> "3. Pending before this Court I am currently seeking appointment as Special Counsel **to represent the Debtor in two matters and any appeals related to the same**, as described in the Application.
>
> 4. I have represented the Debtor in the two matters since August 19, 2019, the date of the Attorney Fee and Retention Agreement that is attached to the Application. In addition, the fee of $100,000.00 described in the Attorney Fee and Retention Agreement has been paid, and was paid by Snakebridge, LLC. There are no other fees due to me or The Nathanson Law Firm however, **costs, on a going forward basis will need to be paid as stated in the Attorney Fee and Retention Agreement**."

The "two matters" involved defending the Goodman case and defending the insurance declaratory case brought by Auto-Owners. No costs arrangement or fee arrangement was agreed to for these attorneys to pursue a ***plaintiff's*** case against the City of Tucson. As quoted above, the costs arrangement reiterated what these attorneys had agreed to do in the Exhibit #1 fee agreement, in a standard defense costs provision.

The expert witness fees alone in a so-called "City of Tucson" case would likely run into six figures given the issues the Dillers wanted to litigate. After all, Goodman sued them because Goodman alleged that the 12 University building owned by Mr. Diller caused water to invade Goodman's adjacent building and to thereby trespass on Goodman's property. The Dillers claimed that the City of Tucson caused the whole problem and failed to correct the condition. The defendants in the state court tort case brought by Goodman pursued their theory by naming the City of Tucson as a non-party at fault. But prior counsel, retained for the state court trial by the carrier, Auto Owners, abandoned or lost the non-party at fault claim against the City of Tucson when the case went to the jury (Group Exhibit #3), which created a preclusive effect problem when the jury returned their verdict and Judgment was entered on that verdict and affirmed on appeal. Therefore, in

5

view of that, Special Counsel was not willing to bring a new case against the City of Tucson for the water problem after all of that occurred at the Goodman jury trial and on appeal.

Debtor's counsel previously attempted to force Special Counsel in this Court into bringing a plaintiff's case against the City of Tucson. The bringing of that prior motion, and the events leading to its withdrawal by Debtor's counsel, most likely involve privileged communications that can be submitted *in camera*. Special Counsel does not want to violate a privilege by spreading things of record that could prejudice the Debtor and its principal. But suffice it to say that the subject matter then in dispute, and still in dispute apparently, was the discrepancy between the January 6, 2021, Appointment Order issued by this Court, and the fee agreement and Affidavit signed by the Special Counsel that is marked as Exhibit #2. At no point did Special Counsel agree to litigate against the City of Tuscon directly. And when this issue was raised, Special Counsel refused to litigate directly against the City of Tucson, which led to the prior attempt to compel him to do so. How and why this Court's Appointment Order mentioned pursuing such a Plaintiff's case or claim, which is not mentioned in Exhibits #1 and #2, is not known to Special Counsel.

The engagement of Special Counsel was pursuant to his fee agreement marked as Exhibit #1 to the Response to the OSC. It is disputed that the fee agreement was "modified by the Order of this Court." The Affidavit signed by Special Counsel (Exhibit #2) in support of his appointment said nothing about any modification of his fee agreement so that he would be obligated to sue the City of Tuscon directly in a plaintiff's case. That was never agreed to. So Special Counsel was not obligated to file a "City of Tucson" case. This Court's Appointment Order actually speaks in terms of "resolving **_or_** litigating" the Notice of Claim previously submitted to the City of Tucson (emphasis added). It does not explicitly require the filing of a lawsuit, although that is what debtor's counsel and the clients wanted. Notices of Claim are often submitted to municipalities with no litigation eventually being filed on the Notice of Claim. If the language "resolving **_or_** litigating"

6

means looking at and researching whether litigation could be pursued, as Special Counsel did, then he and his firm resolved that issue. If "litigating" means the filing of a new lawsuit against the City of Tucson, then Special Counsel refused to do that for all of the foregoing reasons.

The $100,000 was paid to litigate the state court case after the jury verdict, which these attorneys did. They briefed and argued on behalf of all three clients listed in the fee agreement, not just 12 University, LLC, in the post-verdict litigation in the state court, on the following issues: (a) whether a supersedeas bond was required, or whether a property bond could be furnished in lieu of money. When the Superior Court required a monetary bond, these attorneys filed, briefed and orally argued a separate appeal (special action) to the Arizona Court of Appeals on the bond issue, and initially obtained a stay of enforcement of the Judgment on the bond issue alone; (b) whether Defendants should be granted a new trial and the Judgment vacated due to multiple trial and legal errors. These attorneys wrote the Rule 59 motion after reviewing all of the trial transcripts. When the Superior Court denied the Rule 59 Motion, these attorneys filed and briefed another appeal to the Arizona Court of Appeals on the denial of the Rule 59 motion. The decision of the Court of Appeals on that latter appeal is attached as Exhibit #4 to the Response to the OSC. These attorneys then filed a Petition for Rehearing in the Court of Appeals, which was denied, and they intended to file in the Supreme Court of Arizona a Petition for Review when the stay was entered of the appeal.

The $100,000 was also paid to litigate the federal court declaratory case, which involved the preparation, filing, briefing and oral argument in court of the Defendants' Motion for a Preliminary Injunction to compel the insurance carrier to post the supersedeas bond ordered by the Superior Court. That effort led to a written opinion written by District Judge Jorgenson, which is marked as Exhibit #5 to the Response to the OSC. Substantial disclosures by all parties, and written discovery, were also in process in that

case when the stay was entered. It therefore was and is preposterous to suggest that these attorneys have not more than earned their lump-sum attorneys' fee.

For the reasons set forth above, Special Counsel denies the "little to no representation" allegation, as well as the "failure to perform work" allegation in the OSC. It is also denied that only "task and time" billing sheets would be relevant and should be provided if this Court agrees with the debtor's counsel. The fee agreement (Exhibit #1) contains in paragraph C the eight-factor *quantum meruit* formula that is set out in E.R. 1.5 (a)(1-8) of the Arizona Rules of Professional Conduct. There was more to this representation than just billing hours and multiplying by an hourly rate. To be sure plenty of hours were spent and recorded. But the eight factors also deal with the skill of counsel and his or her legal analysis. For example, the issue whether the City of Tucson could be or should be properly and successfully sued at this point requires not just time, but legal analysis and experience. While Special Counsel contends that all this is really about is his refusal to file a new lawsuit against the City of Tucson, which does not really require an eight-factor accounting, there is no doubt that such an accounting could be provided to this Court, if this Court so orders, that would more than justify a lump-sum fee of $100,000 for the foregoing work that was in fact done. Debtor does not and could not dispute the substantial work that is listed and discussed above, as well as the judicial decisions attached that were entered after that work. The ***entitlement*** to an accounting is a separate issue from any amount found due after an accounting. *See, Forgay v. Conrad*, 47 U.S. (6 How.) 212, 214, 12 L.Ed.2d 404 (1848). For each and all of the foregoing reasons, the debtor has not shown that it is entitled to an accounting based on the arguments made in the current Motion.

WHEREFORE, Former Special Counsel, PHILIP J. NATHANSON and THE NATHANSON LAW FIRM, requests this Court to grant them fourteen (14) days to

provide their time records to this Court and counsel, and to produce any further paper files located.

DATED: 31st day of January, 2022.

**THE NATHANSON LAW FIRM**

By: */s/ Philip J. Nathanson*
    Philip J. Nathanson
    *Attorneys for Former Special Counsel*

Philip J. Nathanson (Arizona State Bar #013624)
**THE NATHANSON LAW FIRM**
8326 E. Hartford Dr., Suite 101
Scottsdale, AZ 85255
Phone Number: (480) 419-2578
philipj@nathansonlawfirm.com

*Former Special Counsel for Debtor*

Served via the CM/ECF filing system on all parties of record, and emailed to debtor's counsel on October 4, 2021:

    M. Preston Gardner
    Davis Miles McGuire Gardner, PLLC
    40 E. Rio Salado Parkway
    Suite 425
    Tempe, AZ 85281
    Email: M. PRESTON GARDNER on behalf of Debtor 12 UNIVERSITY, LLC

/s/Philip J. Nathanson