# EXHIBIT 1

F. ANN RODRIGUEZ, RECORDER
Recorded By: CML
DEPUTY RECORDER
1951

W
12 UNIVERSITY LLC
ONE SOUTH CHURCH AVE 900
TUCSON AZ  85701




SEQUENCE: 20133290685
NO. PAGES: 13
AG 11/25/2013
16:45
MAIL
AMOUNT PAID: $18.00

When Recorded Mail to:

12 University, LLC

c/o Patrick Griffin

One South Church Ave., #900

Tucson, Arizona 85701-1620

## RENEWABLE LICENSE AGREEMENT

THIS AGREEMENT ("Agreement") is made as of November 07, 2013, between 12 UNIVERSITY LLC, an Arizona limited liability company ("Owner"), and GREG GOODMAN, an individual ("Goodman"), as set forth below.

1. **Background.** Owner owns the land and improvements known as 12-18 East University, Tucson, Arizona ("Owner Property"; Legally described in Exhibit A) and Goodman owns the land and improvements known as 744-750 North Stone Avenue, Tucson, Arizona ("Goodman Property"; Legally described in Exhibit B). The Owner Property and the Goodman Property share a common boundary.

2. **Purpose.** Goodman needs access across a portion of the Owner Property to make repairs and/or perform maintenance to and/or modifications to a basement/foundation wall of his building on the Goodman Property (the "Building") and the wall above ground on the north and east sides of the Building. The purpose and intent of the parties in entering into this Agreement is to settle their disputes

1

and provide for the conditions under which Goodman may enter the Owner Property to perform necessary maintenance and repairs and/or modifications on the Goodman Property.

3. <u>License.</u> Subject to the terms of this Agreement, Owner grants Goodman a license and permission to enter upon the Owner Property for the purpose of repairing, maintaining, modifying and/or waterproofing a basement/foundation wall, and the wall above ground on the north and east sides of the Building.

4. <u>The Work.</u> The work (the "Work") shall consist of any and all repairs to, or, maintenance of, or modifications to the north and east external walls of the Building, whether above or below ground, including but not limited to waterproofing the walls. Before Goodman can begin modifications, he shall obtain written approval from Owner. Said written approval shall not be unreasonably withheld. If such written approval is withheld, the parties agree to the arbitration process in paragraph 9, *below*. All of the Work shall be performed in a workmanlike manner and shall comply with all applicable statutes, laws, ordinances, codes and standards. The Work shall be performed in a manner that does not unreasonably disturb Owner's tenants' quiet use and enjoyment of the Owner Property given the nature of the work to be performed. The Work shall be performed during normal business hours, from 8:00 a.m. to 5:00 p.m. Goodman shall restore the Owner Property to its original condition upon completion of the Work. Any vegetation which is damaged or destroyed inadvertently or by necessity, as a result of placement of temporary structures (i.e., ladders, scaffolding, et cetera) or work done shall promptly be replaced by Goodman, with the same variety of plant, tree, or vegetation unless Goodman proposes in writing alternative vegetation. Any vegetation which is intentionally damaged or destroyed on the owner's property shall be replaced with like kind vegetation, except (or other than) the creeping vines necessarily destroyed as part of the remedial process contemplated by this renewal license agreement. No sterilization shall be allowed. Replacement vegetation of vines shall be by written

agreement of the parties or arbitration. The approval of the alternative vegetation shall not be unreasonably withheld and shall not include new creeping vines. If such written approval is withheld, the parties agree to the arbitration process discussed in this paragraph 4. Any disputes concerning damage or replacement of vegetation shall be resolved by Dr. Margaret Livingston, Professor of Landscape Architecture at the University of Arizona. If Dr. Livingston charges fees for her work, Dr. Livingston may assess one or both the parties for payment of her fees. There is a presumption that these fees of Dr. Livingston shall be split equally between Goodman and the Owner, unless Dr. Livingston makes an express determination that one party or the other unreasonably caused the necessity for the hearing. She may then assess the party who she's determined unreasonably caused the necessity for the hearing. In the event Dr. Livingston becomes unavailable or otherwise can not or will not act as an arbitrator as defined in this paragraph, the parties may utilize the arbitration provision in paragraph 9 to have the arbitrator in that paragraph 9 appoint a replacement for Dr. Livingston. As part of the Work, Goodman shall be allowed to place on the Owner Property a ladder or ladders; standard commercial grade scaffolding of the type used by tradespeople repairing or replacing a brick facade, provided such placement of scaffolding complies with all applicable statutes, laws, ordinances, and codes; or to make any subterranean excavation of the foundation of the building that complies with the specifications of the Site Plan and Boring Location attached hereto as Exhibit C. Goodman shall further be allowed to place temporarily and as necessary any debris, such as, but not limited to, creeping vines, that Goodman removes from the Building as part of the Work, provided such placement complies with all applicable statutes, laws, ordinances, and codes.

    5.    <u>Procedure</u>. Prior to entering the Owner Property to perform the Work, Goodman must first, and at least two weeks before the work commences, deliver to Owner a written request containing:

    a.    A complete description of the Work to be performed including (without limitation) the location and dimensions of any excavation adjacent to the

Owner Property.

      b.    A copy of the plans and specifications for the Work, if any, including (without limitation) a description of the materials to be applied, utilized or incorporated in the Work, any contracts between Goodman and agents performing the Work, and any proposals of Goodman's agents with respect to the Work.

      c.    The commencement and completion dates for the Work. The Work shall be completed within fourteen (14) days of when it commences, unless Goodman obtains express written approval for an extension of this time from Owner. Owner shall not unreasonably withhold written approval of any request for such an extension. If such written approval of any request for extension is withheld, the parties agree to the arbitration process discussed in paragraph 9, *below*. Owner shall have the right to modify (the "Schedule Modification") these dates by delaying commencement of the Work for up to two-weeks to accommodate Owner's schedule. Any such Schedule Modification shall then be subject to further modification to accommodate the work schedule of Goodman's agents performing the Work; the Owner shall not unreasonably refuse to accommodate the schedule of Goodman's agents performing the work, once a Schedule Modification has taken place. If such a request for accommodation is withheld, the parties agree to the arbitration process discussed in paragraph 9, *below*.

      d.    A current copy of the coverage page of Goodman's commercial general liability insurance policy (the "CGL"), evidencing that the CGL is current in the amount of at least $500,000.

      e.    The name of the contractor who will perform the work, the contractor's license type and number and a copy of the contractor's bond.

      f.    Lien waivers covering the Owner Property from all persons who will perform the Work.

      6.    <u>Approval</u>. Upon delivery of the items in Sec. 5, by Goodman to Owner, and provided the description of the Work does not exceed the scope set forth in Section 4, Owner shall admit Goodman to complete the Work pursuant to the time parameters set forth in Sec. 5(c).

7. <u>Re-Entry</u>. If Goodman needs to re-enter the Owner Property to correct or supplement any Work, Goodman must repeat the process set forth in Sec. 5, above, for Owner's approval.

8. <u>Indemnity</u>. Goodman shall indemnify and hold Owner and its agents, representatives, members and managers harmless against all costs, liabilities, damages, losses, liens, claims and costs of defense arising out of any act or failure to act of Goodman or any person, entity, agent, contractor on or adjacent to the Owner Property having any direct or indirect connection to the Work contemplated by this Agreement.

9. <u>Arbitration</u>. This Agreement is renewable and shall not be revoked by Owner except in the event of material breach or default by Goodman. Material breach or default shall be determined in the sole discretion of Sandra Froman, or in the alternative the Hon. Lina Rodriquez, or a mutually agreed upon successor, acting as arbitrator ("Arbitrator"), pursuant to Rule 16, Ariz.R.Civ.P. In the event that the forgoing designated Arbitrators are unable to serve or that the parties are unable to agree on the designation of an Arbitrator, the Presiding Judge for the Pima County Superior Court shall appoint the Arbitrator. The Arbitrator shall be empowered to enforce this Agreement and grant any and all remedies at law or in equity, including but not limited an award of damages, injunctive relief and/or specific performance. To initiate arbitration ("Arbitration"), either party shall send notice of the alleged breach or default to the other party via certified mail to the address for notice herein, at which point Arbitrator shall hear the dispute at her soonest convenience and make a binding, non-appealable decision, which shall be entered and enforced as a final, non-appealable judgment in Pima County Superior Court. Parties shall split the cost of Arbitrator 50/50, and each bear its own costs and attorney's fees, if any. Notwithstanding the foregoing, the Arbitrator shall be empowered to allocate the cost of the arbitration and/or any reasonable attorney's fees and costs incurred by the non-breaching party, should the Arbitrator, in her sole discretion, deem such allocation appropriate.

10. <u>Notice</u>.  The addresses for notice are as follows:

Goodman:    314 East Magee Road, Tucson, Arizona   85704.

Owner:    12 University, LLC
c/o Patrick Griffin
One South Church Ave., #900
Tucson, Arizona 85701-1620

11. <u>Miscellaneous</u>.  Each party agrees to execute any further documents necessary or required to fully effectuate the terms and intentions of this Agreement. This Agreement may be modified only by a written instrument.  All exhibits to this Agreement are incorporated herein.  This Agreement is binding upon and inures to the benefit of the parties and their respective successors, heirs, and assigns.  This Agreement, upon execution, may be recorded by either party in the land records of Pima County, Arizona. This Agreement is governed by the laws of the State of Arizona.  Time is of the essence of this Agreement.  This Agreement may be executed in counterparts and will be deemed to be fully executed when each party has executed at least one counterpart.  Each party is represented by counsel and participated in drafting this Agreement.

**12 UNIVERSITY, LLC,**
**an Arizona limited liability company**

_____
James Diller, Managing Member
Date: November ___, 2013

_____
Greg Goodman
Date: November 25, 2013

6

STATE OF ARIZONA        )
                        ) ss.
COUNTY OF PIMA          )

Acknowledged, Subscribed and Sworn to this 7th day of November, 2013, by James Diller, Managing Member of 12 University, LLC.




Notary Public

STATE OF ARIZONA        )
                        ) ss.
COUNTY OF PIMA          )

Acknowledged, Subscribed and Sworn to this 25 day of November, 2013, by Greg Goodman.



Sharon K. Waller
Notary Public

7

# EXHIBIT A

## Exhibit "A"

That portion of Block 38 of the City of Tucson, Pima County, Arizona, according to the official survey, map and field notes of said City as made and executed by S. W. Foreman and approved and adopted by the Mayor and Common Council of said city (then Village) on June 26, 1872, a copy of which map is recorded in Book 3 at Page 70 of Maps and Plats in the office of the County Recorder of Pima County, Arizona, described as follows:

COMMENCING at a point in the North line of said Block, distant 66 feet Easterly from the Northwest corner of said Block;

THENCE Easterly along said North line, a distance of 74.8 feet to a point;

THENCE Southerly and parallel with the West line of said Block, a distance of 66 feet to a point;

THENCE Westerly and parallel with the North line of said Block, a distance of 74.8 feet to a point;

THENCE Northerly and parallel with the West line of said Block, a distance of 66 feet to the place of beginning.

Being the East 74.8 feet of the West 140.8 feet of Lot two (2), Block thirty-eight (38), City of Tucson.

13477 00480

# EXHIBIT B

Order No. 108348-06

LEGAL DESCRIPTION

That portion of Block 38 of the City of Tucson, Pima County, Arizona, according to the official survey map, and field notes of said City, made and executed by S. W. Foreman and approved and adopted by the Mayor of Common Council of said City (then village) on June 26, 1872, a copy of which map is of record in Book 3 at Page 70 of Maps and Plats in the office of the County Recorder of said Pima County, Arizona, described as follows, to-wit:

COMMENCING at the Northwest corner of said Block 38;

THENCE in an Easterly direction along the North boundary line of said Lot, a distance of 66 feet to a point;

THENCE Southerly and parallel with the West boundary line of said Block a distance of 66 feet to a point;

THENCE Easterly and parallel with the North boundary line of said Block 118.8 feet to a point on the West line of a 36.8 foot alley running North and South through said Block;

THENCE Southerly along the West line of said alley a distance of 16 feet to a point;

THENCE Westerly and parallel to the North line of said Block a distance of 184.8 feet to a point on the West boundary line of said Block;

THENCE Northerly along the West boundary line of said Block a distance of 82 feet to the PLACE OF BEGINNING. Said property being commonly known as the West 66 feet of Lot 2 and the North 16 feet of Lot 3 in said Block 38. TOGETHER WITH an easement for sewer line created by instrument recorded in Book 111, Deeds of Real Estate, at Page 85.

9616    4162

# EXHIBIT C

